**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1320

BRYAN MANNING; RYAN WILLIAMS; RICHARD DECKERHOFF;
RICHARD EUGENE WALLS,

        Plaintiffs - Appellants,

v.

DONALD CALDWELL, Commonwealth's Attorney for the City of Roanoke;
MICHAEL NEHEMIAH HERRING, Commonwealth's Attorney for the City of
Richmond,

        Defendants - Appellees,

------------------------------

NATIONAL LAW CENTER ON HOMELESSNESS & POVERTY,

        Amicus Supporting Appellant.

Appeal from the United States District Court for the Western District of Virginia, at
Roanoke.  Glen E. Conrad, District Judge.  (7:16-cv-00095-GEC)

Argued:  January 24, 2018                        Decided:  August 9, 2018

Before WILKINSON, NIEMEYER, and MOTZ, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge
Niemeyer joined. Judge Motz wrote an opinion concurring in the judgment.

**ARGUED:** Jonathan Lee Marcus, SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP, Washington, D.C., for Appellants. Trevor Stephen Cox, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Mark D. Young, Maureen A. Donley, Donald P. Salzman, Theodore M. Kneller, Shekida A. Smith, Daniel B. O'Connell, SKADDEN, ARPS, SLATE, MEAGHER, & FLOM, LLP, Washington, D.C.; Mary Frances Charlton, Angela Ciolfi, Elaine Poon, LEGAL AID JUSTICE CENTER, Charlottesville, Virginia, for Appellants. Mark R. Herring, Attorney General, Matthew R. McGuire, Assistant Solictor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. Eric S. Tars, NATIONAL LAW CENTER ON HOMELESSNESS & POVERTY, Washington, D.C.; Richard P. Bress, Andrew D. Prins, George C. Chipev, Ryan C. Grover, LATHAM & WATKINS LLP, Washington, D.C., for Amicus Curiae.

---

WILKINSON, Circuit Judge:

Virginia law criminalizes the possession, purchase, or consumption of alcohol by someone who has been interdicted by a Virginia court. Interdiction is a civil order designating that a person is a "habitual drunkard" or has been convicted of driving while intoxicated. In this case, a group of homeless people suffering from alcoholism challenged the constitutionality of Virginia's interdiction statute under the Eighth Amendment's prohibition on criminalizing status, and the Fourteenth Amendment's guarantee of Due Process and Equal Protection. The district court dismissed the suit, concluding that the statutory scheme criminalizes acts rather than status, affords adequate process, and implicates no suspect class. We agree with appellants that states must tread carefully to avoid criminalizing status. But for the reasons that follow, we affirm.

I.

Virginia regulates the consumption, purchase, manufacture, and sale of alcohol through a series of interconnecting provisions found in Title 4.1 of the Virginia Code.

Under § 4.1-333, a Virginia court may, "after a hearing upon due notice," issue a civil interdiction order to any person who "has been convicted of driving any automobile, truck, motorcycle, engine or train while intoxicated or has shown himself to be an habitual drunkard."

An interdicted person is subject to several restrictions on his conduct. Section 4.1-322 makes it a Class 1 misdemeanor for an interdicted person to "possess any alcoholic beverages" or to "be drunk in public" in violation of another statutory provision. Section 4.1-305 similarly makes it a Class 1 misdemeanor for an interdicted person (or someone

3

under 21 years of age) to "consume, purchase or possess, or attempt to consume, purchase or possess, any alcoholic beverage," except in certain statutorily exempt circumstances such as the use of medicines containing alcohol.

In Virginia, a Class 1 misdemeanor is punishable by "confinement in jail for not more than twelve months and a fine of not more than $2,500, either or both." Va. Code Ann. § 18.2-11 (2014). Any defendant charged with a Class 1 misdemeanor must be informed of his right to counsel, and "shall be allowed a reasonable opportunity to employ counsel," or, if indigent, to obtain court-appointed counsel. Va. Code Ann. §§ 19.2-157, 19.2-159 (2015).

Appellants are four homeless men who were interdicted and later prosecuted for using or possessing alcohol. Bryan Manning was interdicted on October 5, 2010, in the Circuit Court for the City of Roanoke. Ryan Williams was interdicted on February 7, 2012, in the Circuit Court for the City of Roanoke. Richard Deckerhoff was interdicted on August 21, 2009, in the Circuit Court for the City of Petersburg. And Richard Eugene Walls was interdicted on June 12, 2012, in the Circuit Court for the City of Richmond. Each has been prosecuted at least eleven times for violating the alcohol restrictions resulting from his interdiction order.

Appellants filed suit in the United States District Court for the Western District of Virginia. The complaint, brought on behalf of a putative class of "all persons in Virginia who are homeless and who suffer from alcoholism," sought declaratory and injunctive relief against Roanoke Commonwealth's Attorney Donald Caldwell, Richmond Commonwealth's Attorney Michael Herring, and "all Virginia Commonwealth's

4

Attorneys with the authority to enforce the Interdiction Statute against homeless individuals suffering from alcoholism." J.A. 28, 30. It alleged that Virginia Code §§ 4.1-333, 4.1-305, and 4.1-322 imposed cruel and unusual punishment by criminalizing the status of alcohol addiction; deprived plaintiffs of Due Process by converting the first step of a criminal proceeding into a civil proceeding; and violated Equal Protection by treating homeless alcoholics differently from non-homeless alcoholics.

The district court dismissed the suit for failure to state a claim. With regard to the Eighth Amendment challenge, the court concluded that possession or consumption of alcohol "is an act, regardless of whether that possession or consumption is in public or in the confines of [one's] own home," and therefore the statute's application to plaintiffs did not criminalize their status. J.A. 83. As to the Due Process claim, the court was "not convinced that plaintiffs have pled facts demonstrating that the civil interdiction hearings deprive them of their physical liberty," and therefore found no constitutional defect in the process afforded by the statute. *Id*. at 85. Finally, with regard to the Equal Protection claim, the court found no discriminatory intent, no fundamental right, and no protected class to outweigh the Commonwealth's legitimate interest in discouraging alcohol abuse.

This appeal followed. We review de novo a district court's grant of a motion to dismiss. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

II.

5

We first consider whether Virginia's interdiction statute, § 4.1-333, qualifies as cruel and unusual punishment because it criminalizes appellants' status as homeless alcoholics in violation of *Robinson v. California*, 370 U.S. 660 (1962).

The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. In addition to "limit[ing] the kinds of punishment that can be imposed on those convicted of crimes," and "proscrib[ing] punishment grossly disproportionate to the severity of the crime," the Eighth Amendment also "imposes substantive limits on what can be made criminal and punished as such." *Ingraham v. Wright,* 430 U.S. 651, 667 (1977).

In *Robinson v. California*, the Supreme Court recognized one such substantive limit by holding that states could not declare someone a criminal simply on account of his status. 370 U.S. at 666-67 (1962). The Court was considering a California law that made it a misdemeanor "to be addicted to the use of narcotics." *Id*. at 660 (citing Cal. Health and Safety Code § 11721). The statute did not require proof that an alleged drug addict had actually used or possessed drugs, but only that he was in fact a drug addict. Because a "person may be continuously guilty of this offense, whether or not he has ever used or possessed any narcotics within the State, and whether or not he has been guilty of any antisocial behavior there," the Court invalidated the California law as cruel and unusual punishment. *Id*. at 666.

The *Robinson* court was careful to note that the "broad power of the State to regulate the narcotic drugs traffic within its borders" was not at issue. *Id*. at 664. Indeed,

6

a "State might impose criminal sanctions, for example, against the unauthorized manufacture, prescription, sale, purchase, or possession of narcotics" because those things constitute punishable conduct, not status. *Id*. The Court in *Robinson* thus considered and rejected the possibility that its holding could be read to prevent states from criminalizing the "purchase, sale, or possession" of contraband. Because the holding of *Robinson* is so emphatic on this point, it is worth quoting the relevant paragraph in full:

> The broad power of the state to regulate the narcotic drug traffic within its borders is not here in issue. More than forty years ago, this Court explicitly recognized the validity of that power: There can be no question of the authority of the state in the exercise of its police power to regulate the administration, sale, prescription and use of dangerous and habitforming drugs. The right to exercise this power is so manifest in the interest of the public health and welfare, that it is unnecessary to enter upon a discussion of it beyond saying that it is too firmly established to be successfully called in question.

*Id.* at 664 (quotations and alterations omitted).

The Supreme Court revisited the distinction between conduct and status in *Powell v. Texas*, 392 U.S. 514, 514 (1968). In that case, an alcoholic challenged the constitutionality of a Texas law prohibiting public drunkenness on the ground that his status as an addict compelled him to violate the statute. In a divided opinion, the Supreme Court upheld the Texas law. *Id*. A four-justice plurality found that it was not the lack of volition on the part of the offender, but the lack of any conduct whatsoever, that had created a constitutional infirmity in *Robinson*, and that no such defect existed in the Texas law. *Id*. at 533 ("[C]riminal penalties may be inflicted only if the accused has committed some act, has engaged in some behavior, which society has an interest in

preventing, or perhaps in historical common law terms, has committed some *actus reus*.").

Justice White, who cast the decisive fifth vote, wanted to leave open the question of whether conduct compelled by addiction might be protected under *Robinson*. But because Powell "made no showing that he was unable to stay off the streets on the night in question," Justice White voted to uphold the conviction on the ground that Powell's behavior involved a volitional act. *Id*. at 553-54. Justice White wrote that it was "unnecessary to pursue at this point the further definition of the circumstances or the state of intoxication which might bar conviction of a chronic alcoholic for being drunk in a public place." *Id*. at 553.

Appellants argue that Justice White's opinion in *Powell* requires this court to hold that Virginia's statutory scheme imposes cruel and unusual punishment because it criminalizes their status as homeless alcoholics. Specifically, appellants contend that because they face an irresistible compulsion to drink, they had no choice but to yield to their compulsion and consume alcohol in violation of the law. But that is not *Powell*'s holding. As Judge Wilkey wrote more than forty-five years ago, "the interpretation that *Robinson* held that it was not criminal to give in to the irresistible compulsion of a 'disease[]' weaves in and out of the *Powell* opinions, but there [was] definitely no Supreme Court holding to this effect." *Moore v. United States*, 486 F.2d 1139, 1150 (D.C. Cir. 1973) (en banc) (plurality opinion). Indeed, Justice White himself nowhere suggested that *Powell* provided the occasion for a broad holding of any nature, much less a platform for a declaration that *Robinson* was no longer good law or had been

8

overturned. *Powell*, 392 U.S. at 553 (White, J. concurring in the result) ("For the purposes of this case, it is necessary to say only that Powell . . . made no showing that he was unable to stay off the streets on the night in question."). The dissenters in *Powell* in fact sought an extension of *Robinson* along the lines of what our colleague advocates today, *id.* at 567 (Fortas, J. dissenting, joined by Douglas, Brennan, Stewart, JJ.), but Justice White did not join them.

In fact, in the fifty years since the Supreme Court decided *Powell*, there has been a large chorus of circuit opinions—including in this court, *Fisher v. Coleman*, 639 F.2d 191 (4th Cir. 1981)—upholding state laws criminalizing acts that were allegedly compelled. For instance, the Seventh Circuit held that an alcoholic who violated the terms of his parole by consuming alcohol "was not punished for his status as an alcoholic but for his conduct. Therefore, his claim for cruel and unusual punishment fails." *United States v. Stenson*, 475 Fed.Appx 630, 631 (7th Cir. 2012) ("Under *Powell,* punishment for unlawful conduct resulting from alcoholism is permissible."); *see also Joshua v. Adams*, 231 Fed.Appx. 592, 594 (9th Cir. 2007) ("Joshua also contends that the state court ignored his mental illness [schizophrenia], which rendered him unable to control his behavior, and his sentence was actually a penalty for his illness. . . . This contention is without merit because, in contrast to *Robinson,* where a statute specifically criminalized addiction, Joshua was convicted of a criminal offense separate and distinct from his "status" as a schizophrenic."); *Joel v. City of Orlando*, 232 F.3d 1353, 1362 (11th Cir. 2000) ("A distinction exists between applying criminal laws to punish conduct, which is constitutionally permissible, and applying them to punish status, which is not."); *United*

*States v. Benefield*, 889 F.2d 1061, 1064 (11th. Cir. 1989) ("The considerations that make any incarceration unconstitutional when a statute punishes a defendant for his status are not applicable when the government seeks to punish a person's actions."). Our concurring colleague chides these decisions upholding the criminalization of various acts for their brevity. *See* Concurring Op. at 30 n.1. But brevity can serve as an indication that courts have simply found the resolution of this issue to be plain and straightforward.

The *Powell* decision, as we earlier noted, was a 4-1-4 decision. In *United States v. Hughes*, decided earlier this year, the Supreme Court found that it was "unnecessary to consider" its holding in *Marks* that the lower federal courts should follow the narrowest rationale for the holding that received five votes. No. 17–155, slip op. at 3, 584 U.S. ____ (2018) (discussing *Marks v. United States*, 430 U.S. 188, 193 (1977)). To the extent that post-*Powell* decisions have relied upon the plurality opinion in *Powell*, they have overextended themselves in doing so. There was no majority holding that nonvolitional conduct could invariably be criminalized. But again, as Judge Wilkey noted, neither was there any holding that *Robinson* or the status-act distinction was overturned. In the absence of such a ruling and any sort of clear signal from the Supreme Court that *Robinson* no longer remains good law, we think ourselves bound to respect that decision until some clearer and more definitive guidance emerges. Those who see in the *Powell* decision a fulsome embrace or a wholesale repudiation of *Robinson* are simply pushing the matter too far.

What we are left with, then, is simply a matter of fact. And as a matter of fact, for the past fifty years courts have consistently affirmed *Robinson*'s basic holding: although

states may not criminalize status, they may criminalize actual behavior even when the individual alleges that addiction created a strong urge to engage in a particular act. In doing so, courts have respected the Supreme Court's admonition that *Robinson* not be interpreted to undercut longstanding drug and alcohol laws. *See Robinson*, 370 U.S. at 664 (affirming that states could continue to criminalize the "sale, purchase, or possession of narcotics."). To the extent that these courts have relied upon *Powell* to reach this decision, they have erred in doing so. To the extent, however, that they discerned that *Robinson* had not been overturned, they were not wrong.

In concurrence, our colleague would go beyond both *Robinson* and those portions of Justice White's opinion in *Powell* that were necessary to the result, instead developing a new constitutional rule from those issues that Justice White explicitly deemed "unnecessary to pursue" in the case. *Powell*, 392 U.S. at 553. Under our colleague's new rule, the Eighth Amendment would prevent the criminalization of conduct that is "proximate[ly]" caused by "[non]volitional acts." Concurring Op. at 28. It has been almost 60 years since *Robinson* and 50 years since *Powell* were handed down. If the view of our concurring colleague had been adopted, there would presumably be some evidence during the long stretch of time since *Robinson* that some court had done so. Our colleague, however, is met with a dearth of authority, and she references no other circuit court that agrees with so far-reaching an Eighth Amendment view. The one circuit opinion she does reference was later vacated. *Jones v. City of Los Angeles*, 444. F3d 1118 (9th Cir. 2006), *vacated as moot following settlement*, 505 F.3d 1006 (9th Cir. 2007). *See* J.A. 78 (citing *Lehr v. City of Sacramento*, 624 F. Supp. 2d 1218, 1225 (2009) ("This

11

Court finds that, though the *Jones* opinion is informative, it is not binding, and the Court will limit the weight given the decision accordingly."); *Anderson v. City of Portland*, No. 08–1447–AA, 2009 WL 2386056, at \*7 (D. Or. July 31, 2009) ("Ultimately, I part company with the reasoning employed by *Jones*.")).

The small smattering of other authority that the concurrence references are not only in a distinct minority, but also deal with a different question from the one presented here, namely the impossibility of controlling a bodily function. *See* Concurring Op. at 30 (citing *Pottinger v. City of Miami*, 810 F. Supp. 1551, 1565 (S.D. Fla. 1992) ("For plaintiffs, resisting the need to eat, sleep or engage in other life-sustaining activities is impossible.")). This is simply different from the concept of compelled behavior that our colleague espouses. So yet again, the question for us is whether we should permit a 4-1-4 opinion that is at most ambiguous to overturn or greatly extend a longstanding and widely recognized Supreme Court opinion that the Court itself has never seen fit to repudiate or otherwise disavow. It is in the end a matter of respecting both the Supreme Court's authority to overturn its own decisions, *see Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("[T]he Court of Appeals should . . . leav[e] to this Court the prerogative of overruling its own decisions."), and the limits of a circuit court's authority to find circuitous routes around higher controlling precedent.

III.

A.

12

Consistent with the above discussion, it is the act of possessing alcohol—not the status of being an alcoholic—that gives rise to criminal sanctions. Virginia has been careful to draft a statutory scheme that falls on the constitutional side of the line drawn in *Robinson*. The interdiction provision set forth in § 4.1-333 is a civil enactment. An interdiction order is not accompanied by imprisonment or a punitive fine. The Eighth Amendment's prohibition on "cruel and unusual punishment" has obvious criminal purposes. A provision that puts a person on notice that *future acts* may result in criminal sanctions does not criminalize status for the simple reason that it does not criminalize anything. It is the *other* Virginia provisions, not § 4.1-333, that impose criminal sanctions.

While criminal prohibitions do come into play in §§ 4.1-322 and 4.1-305, those prohibitions apply only to affirmative acts: to "possess any alcoholic beverages" or to "be drunk in public," and to "consume, purchase or possess, or attempt to consume, purchase or possess, any alcoholic beverage." Appellants were arrested on the basis of committing these acts. That stands in stark contrast to the statute at issue in *Robinson*, under which a defendant could be charged even if he had never "used or possessed narcotics." 370 U.S. at 666.

We emphasize what we hope would be obvious: it would be unlawful for the state to simply round up "undesirable" persons based on their perceived status as addicts or drunkards. *Cf. Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972). It is inimical to personal liberty to bring criminal charges on the basis of who someone is. For that reason, there must be some behavioral link set forth in the law. But Virginia has been

13

careful to observe that line. It has prohibited individuals deemed at a higher risk of alcohol abuse from possessing or consuming alcohol. This includes not only habitual drunkards, but also people who have been convicted of drunk driving and those under twenty-one. *See* § 4.1-305.

## B.

To accept appellants' claim that there is no difference between alcohol addiction and the act of consuming alcohol would threaten to change the character of criminal law as we know it. Such a position has no plain limiting principle.

We do not state this lightly. It is wise not to accept casually every "slippery slope" or "open-the-floodgates" argument that comes along. But in this case the potential breadth of the principle espoused by appellants is apparent. Every criminal act can be alleged to be the result of some compulsion. If human behavior is viewed as something over which human beings lack control, and for which they are not responsible, the implications are boundless. The examples extend beyond the discrete context of substance addiction. For instance, child molesters could challenge their convictions on the basis that their criminal acts were the product of uncontrollable pedophilic urges and therefore beyond the purview of criminal law. *See Kansas v. Hendricks*, 521 U.S. 346, 362 (1997) (upholding a sex offender statute where the law in question defined sex offenders as "suffering from a 'mental abnormality' or a 'personality disorder' that prevents them from exercising adequate control over their behavior"). The same could be said not only of sex offenders, but of stalkers, domestic abusers, and others driven by impulses they were allegedly powerless to check.

That is not to say that the criminal justice system is or should be unaware of the mitigating character of allegedly nonvolitional conduct. The criminal justice system already has in place numerous features designed to mitigate nonvolitional conduct, among them mens rea requirements (willfully, knowingly); affirmative defenses such as provocation, self-defense, and in extreme cases insanity; and of course sentencing proceedings where any nonvolitional characteristic or circumstance can be appraised by a sentencing judge. Those approaches to nonvolitional conduct often rely upon various combinations of legislative and judicial input, and they are more sensitive and balanced than the constitutional theory appellants propound in the instant case.

## C.

Other features of the Virginia law likewise suffer no constitutional infirmity. Targeting alcohol abuse as Virginia has done is a prophylactic measure. It was permissible for the Commonwealth to regard the acts of purchasing or consuming alcohol as something that could lead persons with a history of heavy drinking to dangerous driving, domestic abuse, and sexual assault, among other criminal acts. The Virginia statutes affect rich and poor alike. They apply to a wide swath of society.

The use of prophylactic measures to sanction relatively minor acts in order to forestall more serious criminal misconduct is hardly uncommon. Many statutory schemes adopt a two-step approach: first, a civil or criminal determination identifies certain people more likely to commit serial or grave offenses. Second, that determination imposes criminal sanctions on what might seem to be relatively minor infractions in order to head off more harmful behavior. For example, the Sex Offender Registration and Notification

15

Act (SORNA) requires federal sex offenders to notify the states where they live and work of their prior conviction. See 34 U.S.C. § 20913. Once the prior conviction has established that a person poses a social risk, his mere failure to register can give rise to criminal liability. *Id.* In that way, SORNA uses criminal law to ensure that sexual offenders cannot fly under the radar. Similarly, federal criminal law prohibits otherwise routine firearms purchases by individuals who have been found by a court in a civil proceeding to be mentally incompetent. Such restrictions reduce the risk those people pose to themselves and to others. *See* 18 U.S.C. §§ 922(g)(4) and 924(a)(2). By the same token, a domestic abuser who violates a civil Temporary Restraining Order can be subject to criminal contempt proceedings. *See, e.g.*, Va. Code 19.2-152.10, et seq. Once someone is found to pose a risk to his spouse or child, the simple act of coming within a certain distance of the protected persons or their home can give rise to criminal liability. Again, in this way, sanctioning a small act serves as a prophylactic measure designed to prevent the commission of a more serious crime.

Virginia's alcohol laws adopt precisely this approach. In fact, the very mechanism by which the state deters alcohol abuse by minors involves the criminalization of acts that are generally legal for the adult population. The same statute that prohibits interdicted people from possessing or consuming alcohol also applies to people who are under twenty-one. *See* Va. Code § 4.1-305. All of these laws have one thing in common: they apply milder sanctions to less serious infractions such as possession or failure to register in order to reduce the risk of grave misconduct involving sexual predation, gun violence, or fatal accidents on the road.

16

Appellants, however, criticize Virginia's approach for its alleged selectivity. They argue first that Title 4.1 singles out homeless people. While this contention sounds more in the nature of a disparate impact equal protection claim than an Eighth Amendment one, see *infra* section V, it is also incorrect. The statutory scheme addresses the problem of drunkenness in its totality. The criminal prohibitions against possessing, purchasing, or consuming alcohol apply both outside and inside a person's home. They apply whenever a non-homeless person leaves home to drive somewhere or attend a party or go to a sports bar.

Our concurring colleague takes a different position, arguing that a statute is fatally selective if it criminalizes "otherwise legal behavior" for a subset of the population. On this view, the legislature can only prohibit acts when the law would "lead to criminal liability for everyone who commits them." Concurring Op. at 34-35. Such a limitation is both wholly lacking in authority and ignores the valid reasons *why* prohibitions apply to some population cohorts and not to others. The reason is simply this: past actions have given rise to present and future risks. To say that a state acts impermissibly on this basis would be an astonishing proposition, and prohibit legislative bodies from making the altogether practical assessment of risky behaviors that is entirely within the legislative prerogative. Such risk assessment has commonly led to limits on the uses of automobiles, firearms, alcohol and the like in order to lessen recognized social harms. The fact that these legislative judgments result in additional burdens for some groups, such as sex offenders, felons, or minors, does not change the Eighth Amendment analysis. To find otherwise would be to do with the Eighth Amendment what the Equal Protection Clause

17

wisely does not, and that is to make suspect classes out of all groups who pose special and heightened risks to the community. *See infra* Part V.

Appellants also allege police misconduct in the execution of this particular statutory scheme. However, this challenge seems more appropriately addressed through the Fourth Amendment. If there were arrests based on undesirable status and divorced from any behavioral link, such police behavior would run afoul of that amendment. In this sense, the Fourth and Eighth Amendments occupy distinct but supplementary domains. The Fourth Amendment requires probable cause to undertake an arrest or search, which means probable cause to believe a forbidden *act*, as required by the Eighth Amendment, has been committed. The concurrence maintains that homeless alcoholics have been arrested "simply because of their presence in a Walmart or near a discarded beer can." Concurring Op. at 37. If that truly is all there is, there would be no probable cause for an arrest, but appellants decline to press their case under any Fourth Amendment theory. The appropriate tonic for police overreach is exclusion of evidence or a civil suit under 42 U.S.C. § 1983 and not, as appellants urge, driving a stake through an entire statutory scheme.

D.

To say that Virginia's approach, as described above, is unconstitutional thus not only misreads its purpose, but also engages in policy choices reserved largely for legislatures and substantially for the states. The reason for legislative responsibility for defining substantive criminal prohibitions is fundamental; the criminal law exists to protect the safety of citizens, and ensuring the safety of the people is one of those things

government exists to do. State legislatures thus have considerable latitude under their police power to address societal ills, and substantive criminal law has historically been reserved to them. What behavior to criminalize is not an exclusive state responsibility, but it is a core one. *See* Rachel E. Barkow, *Our Federal System of Sentencing*, 58 STAN. L. REV. 119, 119 (2005) ("The federal system of the United States is based on the bedrock premise that the states bear primary responsibility for criminal justice policy."). States have a variety of tools with which to approach persistent social ills. The most thoughtful approaches are often the product of democratic input, expert opinion, cumulative experience, and simple trial and error. That is why the Eighth Amendment typically focuses on conditions of confinement, and inhumane forms and disproportionate lengths of punishment, rather than acting as a vehicle to reshape policy choices embedded within substantive criminal laws. *See* Sanford H. Kadish, *Fifty Years of Criminal Law: An Opinionated Review*, 87 CAL. L. REV. 943, 964-66 (1999).

There is, when all is said and done, a balance to be struck. States cannot ignore the line between status and acts. The criminal law and the constitutional limitations within which it operates are founded on the premise that human dignity is universal, and arrests and punishments alike are indefensible when based on who people are rather than what they do. It is a basic transgression on American liberty to brand someone a criminal and then prosecute that person without any underlying criminal conduct. And it is the practice of totalitarian regimes, not our free society, to substitute a personal characteristic for a prohibited act.

But it is also important not to hamstring a state's use of criminal prohibitions to protect its citizenry. Here, as noted, Virginia has opted to approach the problem of alcohol abuse prophylactically and prescriptively. The prophylactic prong is reflected in § 4.1-333. The interdiction order is a preventive tool. The state can use this sort of prophylactic device to identify those at the highest risk of alcohol problems and put them on notice that subsequent behavior may be subject to punishment. It is not constitutionally impermissible for the state to proceed in this manner so long as the line between status and act is scrupulously observed.

## IV.

We next consider whether the interdiction provision, Virginia Code § 4.1-333, violates appellants' Fourteenth Amendment right to Due Process. Appellants argue that despite their nominally civil character, interdiction proceedings must afford criminal protections such as appointed counsel and be governed by the reasonable doubt standard because criminal sanctions against an interdicted homeless alcoholic are "inevitable." Opening Br. of Appellant at 38.

Due Process guarantees an indigent defendant the right to appointed counsel when the nature of a civil or criminal proceeding is such that "if he loses, he may be deprived of his physical liberty." *Lassiter v. Dep't of Soc. Servs. of Durham Cty., N.C.*, 452 U.S. 18, 27 (1981). Due Process also requires that every element of a crime be proved beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364 (1970).

Neither of these requirements applies to Virginia's interdiction provision. Interdiction alone carries no threat of imprisonment. The fact that it may "provide a basis

20

for . . . subsequent prosecution" does not "bring[] an immediate and automatic loss of liberty." *Ferguson v. Gathright*, 485 F.2d 504, 506 (4th Cir. 1973). An interdicted person loses only the legal right to purchase, possess, or consume alcohol. There is no constitutionally protected liberty or property interest in such a right. *See Collins v. Hall*, 991 F. Supp. 1065, 1071-72 (N.D. Ind. 1997) (rejecting a Due Process challenge to a habitual drunkard statute because the plaintiff did not "suffer[] a deprivation of a liberty interest protected by the federal constitution"). Appellants possess an understandable interest in not being labeled "habitual drunkards." But the Supreme Court has been careful to leave redress of reputational injuries to state law. *See Paul v. Davis*, 424 U.S. 693, 701 (1976) (The Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States."). With no constitutionally protected interest at stake, the right to counsel cannot attach to an interdiction proceeding.

As for proof beyond a reasonable doubt, it suffices to reiterate that interdiction is not a criminal proceeding. Appellants' argument elides interdiction with subsequent prosecutions. But these are legally distinct proceedings rooted in separate statutory provisions. The notice and hearing provided in § 4.1-333 satisfies the process that is due in the civil context. *See Plumer v. Maryland*, 915 F.2d 927, 931 (4th Cir. 1990). And appellants do not point to any evidence that Virginia afforded them anything less than the full panoply of procedural protections in their subsequent criminal prosecutions.

V.

21

Finally, we consider whether the interdiction provision violates appellants' Fourteenth Amendment right to Equal Protection under the law. Appellants argue that the statute violates this principle by "intentionally treating . . . homeless alcoholics differently from non-homeless alcoholics," and that this discriminatory treatment mandates strict scrutiny. Opening Br. of Appellants at 45.

When faced with an Equal Protection challenge, the great majority of legislative enactments are subject to rational basis review. That is, we ask whether the law is rationally related to some legitimate government interest. *See, e.g.*, *Star Sci. Inc. v. Beales*, 278 F.3d 339, 351 (4th Cir. 2002). Only those laws that implicate a fundamental constitutional right or employ a suspect classification—typically some immutable characteristic such as race or sex—receive heightened scrutiny. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). ("Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest.").

There is no fundamental right or suspect class at issue here. The freedom to drink alcohol is not "implicit in the concept of ordered liberty such that neither liberty nor justice would exist if [it] were sacrificed." *See Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (internal quotation marks omitted). And while their plight is worthy of both understanding and compassion, those afflicted with alcohol addiction and who lack permanent housing are not a suspect class for Equal Protection purposes. *See Mitchell v.*

*Comm'r of the SSA*, 182 F.3d 272, 274 (4th Cir. 1999) ("Alcoholics are neither a suspect nor a quasi-suspect class for purposes of equal protection analysis."); *Joel v. City of Orlando*, 232 F.3d 1353, 1357 (11th Cir. 2000) ("Homeless persons are not a suspect class."). Even more fundamentally, Virginia's interdiction statute does not single out homeless alcoholics for different treatment. That it may disproportionately affect one group over another, as innumerable statutes do, does not make for unconstitutional discrimination.

Having established that the interdiction statute need only satisfy rational basis review, we can promptly conclude the inquiry. Virginia has a legitimate interest in discouraging alcohol abuse and its attendant risks to public safety and wellbeing. We pass no judgment on the general wisdom of interdiction. But it cannot be said that identifying those at the greatest risk for alcohol abuse and restricting their ability to possess the object of that abuse lacks rationality.

## VI.

It is clear that the Virginia interdiction statute meets with disfavor in the eyes of our fine concurring colleague. In her view, the legislature's enactment of criminal sanctions is the wrong "policy decision[]," and the General Assembly would do well to consult studies "show[ing] that methods focused on treatment, rather than deterrence, are more effective. . . ." Concurring Op. at 36. The concurrence goes to great lengths to inform the legislature of the "many methods available to Virginia" in this endeavor. It suggests that the state pursue "civil" statutes, "prioritize treatment and establish a program of compulsory treatment" for addicts, offer "public health education," or simply

23

enact "laws to ameliorate the economic and social conditions" surrounding alcohol abuse. *Id*. Taken together, these suggestions do no less than tell the state how to calibrate deterrence and rehabilitation, manage budgetary resources, and structure their local economies. As such, it is appropriate that they are directed to the policymakers of the state rather than the litigants in this case. We need not dispute our colleague's ideas, nor pass on their merits. What they represent in their totality is a commandeering and assumption of the legislative role. This conclusion is justified only by the statement that addictions are illnesses. *See id.* at 33. The Commonwealth does not, however, punish the illness. It instead targets what takes place when the illness manifests itself in conduct harming or potentially harming other persons.

A parting recapitulation is in order. As the foregoing indicates, appellants' position suffers from multiple infirmities. As an initial matter, the desire to remove unspecified acts from the purview of criminal law flies in the face of the distinct and emphatic language of the *Robinson* opinion, which indicates that individual actions, as opposed to personal status, remain fair subjects for the legislative contemplation of criminal sanctions. Not only are the words of the Supreme Court disregarded, but the settled legal landscape that for more than half a century has reinforced their relevance.

As noted, appellants' position undermines the basic premise of the criminal law that individuals may indeed bear responsibility for their own actions, even as appellants overlook the considerable measures that our justice system has taken to soften the sanctions and mitigate the hardships of allegedly nonvolitional conduct.

24

Thirdly, appellants' position is a simple affront to our federal system, as it seeks to displace with a single constitutional edict the latitude that the 50 states have long been given to address persistent social ills associated with drug and alcohol abuse.

It is not often that a position operates to visit structural and institutional harms through the preemption of state and legislative authority, the disregard of higher precedent and the erosion of the most basic precepts of the criminal law. Any one of these flaws would be serious. Altogether, they are more than severe. The judgment of the district court is hereby affirmed.

*AFFIRMED*

DIANA GRIBBON MOTZ, Circuit Judge, concurring in the judgment:

More than fifty years ago, the Supreme Court held that the Eighth Amendment prohibits punishing a person for being addicted to narcotics. *Robinson v. California*, 370 U.S. 660 (1962). This was so because "narcotics addiction is an illness," and a state cannot punish a person for an illness. *Id.* at 667. The *Robinson* Court also explained, as the government there recognized, that just as a "narcotics addict" is "in a state of mental and physical illness," "[s]o is an alcoholic." *See id*. at 667 & n.8. In the case at hand, homeless alcoholics challenge a statutory scheme that criminalizes their illness — being addicted to alcohol. Absent binding circuit precedent, I would hold that they, like the defendant in *Robinson*, have alleged an Eighth Amendment violation.

I.

Although a state has the power to punish, the Eighth Amendment mandates that it exercise this power "within the limits of civilized standards." *Kennedy v. Louisiana*, 554 U.S. 407, 436 (2008) (quoting *Trop v. Dulles*, 356 U.S. 86, 100 (1958) (plurality opinion) (internal quotation marks omitted)). Thus, the Eighth Amendment restricts the kinds of punishment that can be executed *and* "imposes substantive limits on *what* can be made criminal." *Ingraham v. Wright*, 430 U.S. 651, 667 (1977) (emphasis added).

In *Robinson*, the Court considered a statute making it a misdemeanor "to be addicted to the use of narcotics." 370 U.S. at 662. Under that statute, the state could convict and imprison an addicted person for ninety days even if he had never "used or possessed any narcotics within the State." *Id.* at 666–67. Speaking for the Court, Justice

26

Stewart reasoned that "narcotic addiction is an illness," which, like other illnesses, may be contracted "involuntarily," and so held that "a state law which imprisons a person thus afflicted as a criminal" violates the Eighth Amendment. *Id*. at 667.

Six years later, the Court considered a challenge to a Texas statute that criminalized public intoxication. *Powell v. Texas*, 392 U.S. 514 (1968). The defendant argued that this statute, like the statute in *Robinson*, punished an illness over which he had no control and so violated the Eighth Amendment. In a fractured opinion (4 – 1 – 4), the Supreme Court rejected that argument.

In *Powell*, four Justices interpreted *Robinson* to prohibit only the criminalization of status. In their view, the Texas statute withstood constitutional challenge because it criminalized the *act* of being intoxicated in public rather than the *status* of alcohol addiction. These Justices did not suggest that alcoholism is not an illness. Nor did they contend that the Eighth Amendment allowed a state to prosecute an individual merely for being an alcoholic. Rather, they concluded that the Texas statute, unlike the law at issue in *Robinson*, did not criminalize "being an addict" or "being a chronic alcoholic." *Id*. at 532 (Marshall, J.) (plurality opinion).

Four other Justices in *Powell* concluded that the Texas statute did violate the Eighth Amendment. Justice Fortas explained that *Robinson* compelled this result because it stood for a principle at "the foundation of individual liberty and a cornerstone of the relations between a civilized state and its citizens." *Id*. at 567. (Fortas, J., dissenting, joined by Justices Douglas, Brennan, and Stewart). Namely, "[c]riminal penalties may not be inflicted upon a person for being in a condition he is powerless to change." *Id.*

27

Because Powell — an alcoholic — "was powerless to avoid drinking" and "once intoxicated, he could not prevent himself from appearing in public places," these Justices would have found the challenged statute did violate the Eighth Amendment. *Id*. at 568.

Justice White provided the decisive fifth vote to uphold Powell's conviction. In doing so, however, he expressly rejected the act-status distinction on which the other four Justices who voted to uphold the conviction had relied. *See id.* at 548. As Justice White explained, "Unless *Robinson* is to be abandoned, the use of narcotics by an addict must be beyond the reach of the criminal law. Similarly, the chronic alcoholic with an irresistible urge to consume alcohol should not be punishable for drinking or for being drunk." *Id.* at 548–49 (White, J., concurring in the judgment). Justice White agreed with the four dissenters that the critical question was not whether the Texas statute punished an "act" or a "status," but rather "whether volitional acts brought about the 'condition'" of public intoxication and "whether those [volitional] acts are sufficiently proximate to the 'condition.'" *Id*. at 550 n.2; *see also id.* ("If it were necessary to distinguish between 'acts' and 'conditions' for purposes of the Eighth Amendment, I would adhere to the concept of 'condition' implicit in the opinion in *Robinson*.").

Crucially, in reaching this conclusion Justice White specifically contemplated a case, like the one at hand, in which an individual is an alcoholic *and* lacks a home. He explained that "chronic alcoholics must drink and hence must drink *somewhere*," and while many chronic alcoholics "have homes, many others do not." *Id*. at 551. Thus, if individuals could show *both* that "resisting drunkenness is impossible *and* that avoiding public places when intoxicated is also impossible," a statute banning public drunkenness

28

would be unconstitutional as applied to them. *Id.* (emphasis added). In those circumstances, the statute would, in effect, "ban[] *a single act* for which [homeless alcoholics] may not be convicted under the Eighth Amendment — *the act of getting drunk*." *Id.* (emphases added).

Despite this, my colleagues elide the fact that Powell's ability to "stay off or leave the streets" was a decisive factor in Justice White's concurrence. *Id.* at 553. But the closing words of his opinion make clear that these facts mattered:

> For the purposes of this case, it is necessary to say only that Powell showed nothing more than that he was to some degree compelled to drink and that he was drunk at the time of his arrest. He made no showing that he was unable to stay off the streets on the night in question. Because Powell did not show that his conviction offended the Constitution, I concur in the judgment affirming the Travis County court.

*Id.* at 553–54 (footnote omitted). In other words, it was *because* Powell did not show "that he was unable to stay off the streets" that Justice White concurred in the judgment, rather than siding with the dissent. *Id.* at 552–54.

My colleagues' assertion that I am creating a "new rule" disregards the Supreme Court's instruction that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (citation and internal quotation marks omitted); *see also Hughes v. United States*, __ S. Ct. __ (2018) (concluding it "unnecessary" to reconsider the reasoning of the *Marks* rule). Justice White's concurrence clearly rested on "the narrowest grounds" for upholding the

29

defendant's conviction in *Powell*. Accordingly, it *should* control our analysis in the case at hand.

The Department of Justice has adopted this interpretation. *See* Statement of Interest of the United States at 7–12, *Bell v. City of Boise*, 993 F. Supp. 2d 1237 (D. Idaho 2014) (No. 1:09-cv-00540-REB). And so have some courts. *See, e.g.*, *Jones v. City of Los Angeles*, 444 F.3d 1118, 1135–36 (9th Cir. 2006), *vacated as moot due to a settlement*, 505 F.3d 1006 (9th Cir. 2007); *Pottinger v. City of Miami,* 810 F. Supp. 1551, 1561–1565 (S.D. Fla. 1992).

But some courts have erroneously relied instead on the plurality opinion in *Powell* and, on this basis, upheld laws like the one challenged here. Unfortunately, our court is one of those to do so. *See Fisher v. Coleman*, 639 F.2d 191 (4th Cir. 1981) (per curiam); *see also Joel v. City of Orlando*, 232 F.3d 1353, 1362 (11th Cir. 2000); *United States v. Benefield*, 889 F.2d 1061 (11th. Cir. 1989).[1] As my colleagues themselves recognize, courts that "have relied upon the plurality opinion in *Powell* . . . have overextended themselves in doing so."

Justice White's opinion should have controlled our holding in *Fisher*, just as it should control our analysis here. In *Fisher*, the district court had upheld Virginia's

---

[1] My colleagues' suggestion that two other courts of appeals have joined in "a large chorus of circuit opinions" supporting their contrary approach rests on two short unpublished (and therefore non-precedential) opinions. Neither case involves a challenge to the constitutionality of a statute, nor provides any persuasive rationale in support of my colleagues' position. *See United States v. Stenson*, 475 F. App'x 630 (7th Cir. 2012) (per curiam); *Joshua v. Adams*, 231 F. App'x 592 (9th Cir. 2007).

statutory scheme, reasoning that *Powell* "specifically rejected" the contention that "conduct symptomatic of alcoholism" was constitutionally protected and that "the case at bar falls squarely within the holding of *Powell*." *Fisher v. Coleman*, 486 F. Supp. 311, 316 (W.D. Va. 1979). In a short per curiam opinion, we simply affirmed the district court "for reasons sufficiently stated by that court." 639 F.2d at 192. Thus, our affirmance relied entirely on the district court's treatment of the plurality opinion in *Powell* as controlling — totally ignoring Justice White's narrower approach, which *Marks* teaches is to be regarded as "the holding of the Court." 430 U.S. at 193.

## II.

Applying the narrower approach set forth by Justice White compels the conclusion that Plaintiffs have alleged an Eighth Amendment violation. Plaintiffs allege that they are homeless and suffer from an illness: alcoholism. They assert that, after Virginia labeled them "habitual drunkards" and interdicted them, the state criminally charged and then repeatedly prosecuted them for actions compelled by their status as homeless alcoholics.

Plaintiffs allege that Virginia interdicted them — often in absentia — upon deeming them "habitual drunkards," a vague statutory term that has historically served as a euphemism for the homeless. *See* Jayesh M. Rathod, *Distilling Americans: The Legacy of Prohibition on U.S. Immigration Law*, 51 Hous. L. Rev. 781, 792 (2014); *see e.g.*, Colin L. Anderson, *Median Bans, Anti-Homeless Laws, and the Urban Growth Machine*, 8 DePaul J. for Soc. Just. 405, 412–18 (2015). Plaintiffs claim that, once interdicted, the

31

Commonwealth arrested and criminally prosecuted them — not once or twice, but dozens of times — for otherwise legal behavior.

For example, they allege that police officers arrested Plaintiff Bryan Manning on one occasion "for smelling like alcohol" and on another for being "in a Walmart store where alcohol was sold." They assert that officers arrested Plaintiff Ryan Williams for "sleeping in a park bathroom" where "a beer can was found in the trash," and arrested Plaintiffs Richard Deckerhoff and Richard Eugene Walls for being "near" beer cans.

Finally, Plaintiffs allege that the Commonwealth provides no clear procedure for removing the "habitual drunkard" label post-interdiction, such that interdicted persons are essentially branded for life. On the basis of these facts, Plaintiffs maintain that, as applied to them, Virginia's statutory scheme violates the Eighth Amendment by subjecting them to incarceration because of their status as "homeless alcoholics."

In arguing to the contrary, the Commonwealth heavily relies on the fact that the Virginia statute operates in two steps. Va. Code § 4.1-333(A) permits a court to enter a civil interdiction order "prohibiting the sale of alcoholic beverages . . . until further ordered" to a person who "has shown himself to be an habitual drunkard." Then Va. Code §§ 4.1-322 and 4.1-305 make it a Class 1 misdemeanor for an interdicted person to "possess any alcoholic beverages" or to "consume, purchase or possess, or attempt to consume, purchase or possess, any alcoholic beverage." The punishment for this crime is "confinement in jail for not more than twelve months and a fine of not more than $2,500, either or both." Va. Code § 18.2-11(a).

32

Virginia's two-pronged statutory scheme may be more indirect than the statute at issue in *Robinson*, but it yields the same result.  If the statute at issue in *Robinson* had allowed the state to "interdict" prescription drug addicts and then arrest interdicted addicts for filling those prescriptions, the statute *effectively* would also have criminalized "being addicted to narcotics" even if it *nominally* punished only filling prescriptions. Such a statute would surely be unconstitutional as well.

A statute that would be unconstitutional if accomplished in one step cannot be rendered constitutional simply by bifurcating it.  Thus, although Virginia may nominally penalize "possession" or "consumption," the Commonwealth's statutory scheme effectively targets and punishes homeless alcoholics based on their illness.  That the Commonwealth brands homeless alcoholics as "habitual drunkards" before prosecuting them for involuntary manifestations of their illness does nothing to cure the unconstitutionality of the statutory scheme.


III.

Moreover, contrary to my colleagues' suggestions, adopting Plaintiffs' position would not shield individuals from prosecution for violating generally applicable laws, curtail a state's ability to impose post-conviction restrictions, or infringe on a state's ability to regulate alcohol.  My colleagues warn against "accept[ing] casually every 'slippery slope' or 'open-the-floodgates' argument that comes along."  But in the same breath, they fall into this very trap.  Plaintiffs challenge *only* the targeted criminalization of *otherwise legal* behavior that is an involuntary manifestation of their illness.  Plaintiffs

33

do not assert that they are immune from prosecution for generally applicable criminal offenses. They do not question the constitutionality of restrictions imposed after a criminal conviction. And they raise no objection to the Commonwealth's general ability to regulate alcohol or other substances within its borders.

The contention that Plaintiffs' position leads to holding that any "uncontrollable" act absolves an individual of responsibility for generally applicable crimes is clearly incorrect.[2] A state undoubtedly has the power to prosecute individuals — even those suffering from an illness — for breaking laws that apply to the general population. Under the Eighth Amendment, an alcoholic may not, as a result of his addiction, escape prosecution for criminal behavior that is unlawful if committed by a non-alcoholic. But Plaintiffs do not seek a special exemption from *generally applicable* criminal laws. The constitutional challenge we confront today deals only with a law that targets a group of vulnerable, sick people for special punishment based on otherwise legal behavior (drinking alcohol) that is an involuntary manifestation of their illness.

Accordingly, Plaintiffs' position does not jeopardize laws generally criminalizing certain behavior. Those laws apply to all and reflect a state's legitimate concern that

---

[2] Any suggestion to the contrary is a straw man. Five Supreme Court Justices have rejected this very argument. *See Powell*, 392 U.S. at 552 n.4 (White, J., concurring in the judgment) ("A holding that a person establishing the requisite facts could not, because of the Eighth Amendment, be criminally punished for appearing in public while drunk would . . . hardly have radical consequences."); *id.* at 59 n.2 (Fortas, J., dissenting, joined by Justices Douglas, Brennan, and Stewart) ("It is not foreseeable that findings such as those which are decisive here . . . would be made in the case of offenses such as driving a car while intoxicated, assault, theft, or robbery.").

some actions are so dangerous or contrary to the public welfare that they should lead to criminal liability for everyone who commits them. That is not the case here. Generally, Virginians over the age of 21 can possess and consume alcohol, but if the state brands a person a "habitual drunkard" and interdicts him, behavior that is legal for all others over 21 becomes criminal for the interdicted person. *See* Benno Weisberg, *When Punishing Innocent Conduct Violates the Eighth Amendment: Applying the* Robinson *Doctrine to Homelessness and Other Contextual "Crimes,"* 96 J. Crim. L. & Criminology 362 (2005) (arguing that there is an important distinction for Eighth Amendment purposes between "laws that criminalize specific conduct" in all spatial and temporal contexts — such as theft, homicide, rape, assault, and buying or possessing drugs — and "laws that criminalize conduct only when performed in certain contexts").

Nor, contrary to my colleagues' suggestion, does Plaintiffs' position undermine a state's use of prophylactic measures to thwart "serious criminal misconduct." States certainly have a legitimate interest in using such measures to prevent and deter criminal offenders. But Plaintiffs' challenge simply does not impact enhanced punishments or post-conviction restrictions imposed because of a prior criminal conviction. Those laws do empower courts, in some instances, to impose such punishments and restrictions on those who suffer from certain illnesses, but *only* where a defendant has already been convicted of a crime — a conviction imposed subject to due process and other constitutional safeguards. *See, e.g.*, 34 U.S.C. § 20913 (establishing sex offender registry); *id*. § 20911(1) (defining "sex offender" as "an individual who was convicted of a sex offense").

Finally, holding Virginia's statutory scheme unconstitutional would not affect "[t]he broad power of a State to regulate" alcohol or narcotics within its borders. *See Robinson*, 370 U.S. at 664. There are many methods available to Virginia to pursue these goals. The Commonwealth can enact civil, and generally applicable criminal statutes addressing alcohol and narcotics abuse. *See id.* at 664. It can elect to prioritize treatment and "establish a program of compulsory treatment for those addicted to" alcohol. *See id.* at 664–65. And it can "choose to attack" the combined "evils" of alcoholism and homelessness "through public health education," or by enacting laws designed to "ameliorate the economic and social conditions under which those evils might be thought to flourish." *See id.* at 665.

Policy decisions such as these are, of course, not ours to make; they rest within the sound province of the Virginia General Assembly. I note, however, that just as society's understanding of alcoholism and addiction have evolved in the 56 years since *Robinson*, so too have methods of targeting these problems. Indeed, studies have repeatedly — and convincingly — shown that methods focused on treatment, rather than deterrence, are more effective at targeting the combined problems of alcoholism and homelessness. *See, e.g.*, U.S. Interagency Council on Homelessness, *Searching out Solutions: Constructive Alternatives to the Criminalization of Homelessness* (June 2012).[3]

---

[3] Only Virginia and Utah continue to use criminal sanctions such as this. *See* Utah Code §§ 32B-4-413, 32B-4-304. That only two states still impose criminal penalties on alcoholics using interdiction schemes — schemes originating in the late 19th century, *see, e.g.*, Va. Code. Ch. 83 § 5 (1873) — suggests yet another reason why such a scheme is unconstitutional. *See Trop*, 356 U.S. at 100–01 (plurality opinion) (explaining that (Continued)

In response to this concurrence, my colleagues offer rhetoric and misapprehensions. I will not attempt to match the rhetoric, but must correct a few of the misapprehensions. Faithfully following Justice White's controlling opinion in *Powell*, as I would, does not "overturn or greatly extend" Supreme Court precedent. Rather, only this course properly follows the Court's longstanding *Marks* rule. And the accusation that I have gone "to great lengths to inform the legislature" that it has made "the wrong 'policy decision[]'" ignores the preceding paragraphs. In fact, I expressly recognize that policy decisions are the legislature's province — provided those decisions do not violate the Constitution. Finally, of course a state may target conduct "harming or potentially harming other persons," but the statute at issue here contains no such limitations. Indeed, the complaint alleges that the Commonwealth routinely uses this statute to arrest homeless alcoholics simply because of their presence in a Walmart or near a discarded beer can. (Given these allegations, Plaintiffs may also have a claim under the Fourth Amendment, as my colleagues suggest; of course, a plaintiff need not pursue every available claim.)

Thus, although my colleagues' opinion makes for dramatic reading, their analysis remains divorced from the law and the facts of this case. Plaintiffs' challenge is a narrow one that will neither hinder nor even implicate a state's ability to make legislative judgments concerning the safety and welfare of its citizens.

---

because "the words of the [Eighth] Amendment are not precise" and "their scope is not static," the Supreme Court has recognized that "[t]he Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society").

## IV.

The statutory scheme challenged here criminalizes the otherwise legal behavior of individuals suffering from a serious illness. The specter of this unconstitutional law looms large over a number of the Commonwealth's most vulnerable citizens. Plaintiffs allege that from 2007 to 2015, Virginia interdicted 1,220 individuals and recorded 4,743 criminal convictions of interdicted persons for alcohol possession or consumption.

Imprisonment for a short time — here, for not more than twelve months — does not, in the abstract, seem to be cruel or unusual punishment. But, as the *Robinson* Court recognized, "[e]ven one day in prison would be cruel and unusual punishment for the 'crime' of having a common cold." 370 U.S. at 667. The targeted criminalization of otherwise legal behavior that is an involuntary manifestation of an illness is just as clearly cruel and unusual punishment here as it was in *Robinson*.

Given our precedent,[4] I must concur in the judgment rejecting the challenge to Virginia's statutory scheme. Because thousands of Virginians remain subject to a law that, in my view, is unconstitutional, I do so with reluctance and regret.

---

[4] Plaintiffs recognize that *Fisher* constitutes circuit precedent, but suggest that we "take the opportunity to reconsider" *Fisher*. Appellants' Br. at 37. This panel cannot do so. In the absence of an intervening change in the law, "[o]nly the full court, sitting *en banc*," can do so. *Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 275 (4th Cir. 2015).